**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Barker*, No. 25-cv-03785<br>*Brunell*, No. 25-cv-01392<br>*Jones*, No. 25-cv-00094 | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiffs Shelia Barker, Betty Brunell, and Mason Jones erroneously contend that their lawsuits were timely despite the fact that they all filed more than four years after they were first diagnosed with periprosthetic joint infections ("PJI"). Plaintiffs argue that the doctrine of fraudulent concealment should toll the limitations period and save their claims. Recognizing that they have not properly pled fraudulent concealment, Plaintiffs each request permission to amend their complaints to add factual allegations to satisfy the pleading standard. Each Plaintiff filed a Proposed Amended Complaint ("PAC") with their respective Motions to Amend.

The PACs demonstrate that granting leave to amend would be futile in these cases for two reasons. First, the PACs fail to adequately plead fraudulent

concealment pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Second, even if fraudulent concealment were pled with particularity as required by Rule 9(b), this Court has previously held that the statute of limitations is tolled only until the onset of infection, at which time a plaintiff is on inquiry notice to discover their claims.[1] This same rule governs accrual under Tennessee's discovery rule, and the PACs themselves plead dates of diagnosis and treatment that place each Plaintiff on inquiry notice more than four years before filing suit. Plaintiffs' claims are therefore untimely as a matter of law, and any attempt to amend would be futile.

Accordingly, Plaintiffs' individual Motions for Leave to Amend (*Barker*, No. 25-cv-03785, Dkt. 17; *Brunell*, No. 25-cv-01392, Dkt. 14; *Jones*, No. 25-cv-00094, Dkt. 16) should be denied.

## ARGUMENT

### I. Plaintiffs Should Be Denied Leave to Amend Because the Proposed Amendments Are Futile.

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan*

[1] *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025); Dkt. 3563; Dkt. 3571.

*Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Plaintiffs assert that 3M "cannot argue futility" because the PACs "contain[] many more facts and details than the Master Complaint in the MDL." (*See* Memoranda in Support of Motions to Amend, *Barker* Dkt. 18 at 8; *Jones* Dkt. 17 at 8; *Brunell* Dkt. 15 at 9.) But that argument misses the point. Futility must be determined based on the sufficiency of the allegations in the PACs and is not dependent upon whether 3M previously challenged the Master Complaint.

Here, the PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment with the particularity Rule 9(b) requires; and (2) even accepting the PACs' allegations as true, Plaintiffs were on inquiry notice of their claims when they were diagnosed with and treated for infection, which both ends any

tolling under the fraudulent concealment doctrine and triggers accrual under Tennessee's discovery rule. Because the PACs plead that Plaintiffs were diagnosed with infections more than four years before filing suit, their proposed amendments are futile.[2]

### A. Plaintiffs Fail to Adequately Plead Fraudulent Concealment.

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

---

[2] Plaintiffs do not dispute 3M's arguments that their negligence, strict liability, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and unjust enrichment claims are subject to the one-year statute of limitations for injuries to the person. Tenn. Code § 28-3-104(a)(1)(A); Tenn. Code § 28-3-104(b). Nor do Plaintiffs dispute that their claims under the Tennessee Consumer Protection Act ("TCPA") are subject to a one-year statute of limitations, and their breach of warranty claims are subject to a four-year statute of limitations. Tenn. Code § 47-18-110; Tenn. Code § 47-2-725(1).

Under Tennessee law, a plaintiff relying on fraudulent concealment must establish that: (1) "the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so"; (2) "the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence"; (3) "knowledge on the part of the defendant of the facts giving rise to the cause of action"; and (4) "concealment of material information from the plaintiff." *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998). In addition, "[p]laintiffs asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations must demonstrate that they exercised reasonable care and diligence in pursuing their claim." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 463 (Tenn. 2012).

As an initial matter, the PACs do not adequately allege when and how Plaintiffs discovered 3M's alleged fraud. Brunell's PAC contains general allegations about how she discovered that a Bair Hugger system was used in her surgery, but it provides no detail about when or how she allegedly discovered that 3M had engaged in purportedly fraudulent conduct. (*See* Brunell PAC ¶ 40.) Barker and Jones allege only that they "did not learn of Defendants' concealment efforts" until they saw an unidentified "advertisement . . . about post-orthopedic implant surgical infections" and consulted an attorney. (Barker PAC ¶ 36; Jones PAC ¶ 36.) They do not identify

the advertisement's source or content, what "concealment efforts" it revealed, or how it disclosed any act of concealment by 3M. Without providing these essential details, Plaintiffs have not pled fraudulent concealment with the requisite particularity. *Summerhill*, 637 F.3d at 881. And without particularized allegations addressing when and how Plaintiffs purportedly learned of 3M's alleged fraud, Plaintiffs cannot demonstrate that they exercised reasonable care and diligence in pursuing their claims. *See Redwing*, 363 S.W.3d at 463.

Moreover, the allegations in the PACs are insufficient as a matter of law to demonstrate fraudulent concealment. Plaintiffs accuse 3M of concealing the alleged risks of the Bair Hugger system "[t]hrough misrepresentations to the public, the medical community, and the FDA." (Barker PAC ¶ 19; Jones PAC ¶ 19; Brunell PAC ¶ 138.) Plaintiffs make similar allegations that "[t]he fraudulent statements were relied upon, preventing Plaintiff from learning that the Bair Hugger was the cause of Plaintiff's infection" (Barker PAC ¶ 39; Jones PAC ¶ 39), and that 3M's "affirmative acts . . . were designed to, and did in fact, obstruct and prevent medical providers and potential plaintiffs, including Plaintiff in this matter, from discovering the facts." (Brunell PAC ¶ 163.) But none of the Plaintiffs make specific allegations demonstrating: (1) that any particular statement was directed to or heard by Plaintiffs or their medical providers, including the who, what, where, when, and how of any such

statement; (2) that 3M knew of Plaintiffs' existence, their injuries, or that a Bair Hugger system was used in their individual surgeries; (3) that 3M took any specific action designed to deceive any particular Plaintiff or their particular medical providers; or (4) how specifically 3M's statements prevented Plaintiffs from timely filing their claims. Brunell identifies no statement made to her physician or hospital, alleging only "[u]pon information and belief" that her "healthcare providers relied upon the affirmative misrepresentations made by Defendant 3M." (Brunell PAC ¶ 136.) Specific details are essential to pleading fraudulent concealment, and without them, Plaintiffs have not established that fraudulent concealment applies to toll their claims. *See Summerhill*, 637 F.3d at 880-81.

In addition, Plaintiffs rely on statements that 3M's website makes "[c]urrently" (Barker PAC ¶ 25; Jones PAC ¶ 25; Brunell PAC ¶ 139), on testimony that 3M's expert "testified live at trial" in "October of 2022" (Barker PAC ¶ 26; Jones PAC ¶ 26; Brunell PAC ¶ 140), and on testimony a 3M employee gave "in January of 2022." (Barker PAC ¶ 30; Jones PAC ¶ 30; Brunell PAC ¶ 145.) These statements are irrelevant because they were made years after Plaintiffs' surgeries and subsequent PJIs. Moreover, the formation of the MDL in December 2015 effectively terminated the possibility that 3M could have fraudulently concealed any cause of action from any plaintiff. *See City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025)

(holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *aff'd sub nom. City of Bos. v. OptumRx, Inc.*, 169 F.4th 58 (1st Cir. 2026). That is especially true here: each Plaintiff's surgery took place in 2019 or 2020, years after the MDL was formed. Indeed, this Court has already found that a plaintiff who underwent surgery in 2020 could have discovered their potential claim due to "the easily accessible and highly publicized information allegedly linking Bair Hugger to PJIs" arising from the Bair Hugger MDL. Dkt. 3563 at 15.

For these reasons, Plaintiffs fail to adequately plead fraudulent concealment in their PACs. As a result, fraudulent concealment does not operate to save their untimely claims, and the proposed amendments would be futile. The Court should therefore deny Plaintiffs' motions for leave to amend.

### B. Plaintiffs' Claims Accrued and Any Alleged Tolling of the Statute of Limitations Ended When Plaintiffs Were First Diagnosed with PJIs.

Fraudulent concealment and Tennessee's discovery rule turn on the same inquiry. "[T]he effects of the doctrine of fraudulent concealment cease when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015) (internal quotations, emphasis, and

ellipses omitted) (quoting *Redwing*, 363 S.W.3d at 463). Likewise, a personal injury claim accrues “when the plaintiff knows, or in the exercise of reasonable care and diligence should know, that an injury has been sustained.” *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). The discovery rule tolls the limitations period “only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry.” *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680-81 (Tenn. 1990); *see also Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 718 (Tenn. Ct. App. 2008). Inquiry notice exists once a plaintiff “gains information sufficient to alert a reasonable person of the need to investigate the injury.” *Redwing*, 363 S.W.3d at 459 (internal quotations and citation omitted).

This Court has already concluded that the onset of a plaintiff’s infection is sufficient to put a plaintiff on inquiry notice to discover their cause of action. *See, e.g.*, *Skinner*, No. 17-cv-2149, Dkt. 98 at 6-7 (“At any time after he was diagnosed with a [PJI] in March 2012, [Skinner] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger’s alleged defects and alleged dangers.”); *see also* Dkt. 3563 at 9 (finding that once “Plaintiffs were aware that they had developed post-operative infections requiring medical intervention,” their “injuries were sufficiently ascertainable to support a cause of action”); Dkt.

3571 at 17 (finding that "once [Plaintiff] developed her infection, she was on notice of her alleged injury"). The same reasoning applies here.

At the time Plaintiffs were first diagnosed with a PJI, they could have discovered their causes of action through reasonable diligence. Specifically, they could have requested their medical records and obtained medical and legal assistance to evaluate the cause of their infections. Brunell developed an infection after her index surgery and underwent an additional procedure on October 31, 2019. (Brunell PAC ¶¶ 31-32.) Similarly, Barker developed an infection following her index surgery and underwent a revision procedure on November 17, 2020 (Barker PAC ¶¶ 8-9), and Jones developed an infection and underwent revision surgery on February 5, 2020. (Jones PAC ¶¶ 8-9.) Nevertheless, despite the fact that Plaintiffs were diagnosed with infections in 2019 (Brunell) and 2020 (Barker and Jones), they each waited more than four years to file their initial complaints. Plaintiffs have not alleged facts to establish that they acted with due diligence, nor do they explain how any alleged fraudulent concealment prevented them from timely filing their complaints.

Any tolling based on fraudulent concealment or delayed accrual based on the discovery rule ended when Plaintiffs were first diagnosed with an infection. As such, Plaintiffs' claims are untimely as a matter of law, and any attempt to amend their complaints would be futile.

## CONCLUSION

For the foregoing reasons, Barker's, Brunell's, and Jones's claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, Plaintiffs' Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: October 19, 2026

*s/John P. Mandler*

John P. Mandler (#0194438)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
NORTON ROSE FULBRIGHT US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***